24 C.C.P.A.(Patents)

## In re CROWELL et al.
## Patent Appeals No. 3814.

Court of Customs and Patent Appeals.
June 7, 1937.

John Boyle, Jr., of Washington, D. C., and F. M. Crawford and S. W. Scott, both of Terre Haute, Ind., for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellants have filed an application in the United States Patent Office for the issuance of a patent on certain claimed new and useful improvements in liquid fuel stoves. It is stated in the specification that the application is principally concerned with stoves which are designed to smokelessly burn liquid fuels, such as alcohol and the like, and that the alleged invention is a stove that is specially adapted for heating transportation or refrigerator cars, principally those used to transport fruit and foods which are easily injured by variations in temperature under transportation. The appellants' particular heater involves several elements, most of which are well defined by the rejected claims. Of these claim 30 is thought to be typical, and is as follows:

"30. In an alcohol heater, the combination of a main fuel reservoir, a main heating burner and a pilot burner positioned below said main reservoir, an auxiliary reservoir positioned below said main reservoir and connected to the lower portion thereof by a liquid conduit, a float actuated valve positioned in said auxiliary reservoir and operatively connected to said conduit to maintain the liquid level in said auxiliary reservoir below the level of the burner tops, a liquid conduit connecting said auxiliary reservoir to the pilot burner, and a liquid conduit connecting said auxiliary reservoir to the main burner, a thermostatic valve in said last mentioned conduit and located between the float actuated valve and the main burner, the said float actuated valve providing a constant head of liquid to said thermostatic valve."

The claims remaining in the case at this time are claims 30 to 33, inclusive. These were all rejected by the Primary Exam-

**126**

iner on the following references: Webster-Flockton, 11,730, October 10, 1844 (French); Sheer, 1,432,576, October 17, 1922; Sheer, 1,475,030, November 20, 1923; De Florez, 1,536,705, May 5, 1925; White et al., 1,891,855, December 20, 1932; Pickup, 1,900,520, March 7, 1933.

An affidavit having been filed under rule 75 of the Rules of Practice in the United States Patent Office, the patent to Pickup was withdrawn as a reference, and the claims were then rejected by both tribunals on the remaining references.

As to the patents to Sheer, 1,475,030, and to De Florez, the solicitor for the Patent Office says:

"The patents to Sheer, 1,475,030, and to De Florez, 1,536,705, were listed by the examiner and the Board of Appeals as being among the references relied upon but inasmuch as neither of these two patents seem to be specifically applied to any claim either by the examiner or by the Board of Appeals further consideration of them here appears to be unnecessary."

Therefore, as stated by the solicitor in his brief, there remain only three references relied upon, namely, the French patent to Webster-Flockton, the patent to Sheer, 1,432,576, and the patent to White et al., and two grounds of rejection. These two grounds are stated by him, as follows:

"* * * In brief these two grounds of rejection are that there is no invention in adding the thermostatic valve control to the structure of the references which disclose the float valve control, or on the other hand, that there is no invention over the references which does disclose the thermostatic valve control in the feature of providing a float controlled valve. In other words it was held that the prior art shows all the elements claimed and there is no invention, in view of the teachings of the art, to put these elements together in the form claimed by appellants. * * *"

The application of the appellants discloses the heater to consist, as stated by the Examiner, of the following:

"The alleged invention resides in a liquid fuel feeding system for a combined main and pilot burner structure 36 employed in liquid fuel heaters and comprises a main fuel reservoir 11, an auxiliary, float controlled, constant level reservoir 8 intermediate the main reservoir and burner, an open top thermostatic valve 45 positioned intermediate the auxiliary reservoir and the main burner, and a connection 23a or 21a between said auxiliary reservoir and the pilot structure."

In other words, the heater has a central flue or chimney, at the bottom of which is a wickless burner. Above and at the sides of the heater is a tank with a principal fuel supply. Underneath one side of this principal tank is an auxiliary tank which feeds fuel to the burner in the center of the heater. The fuel supply is controlled between the auxiliary tank and the burner by a thermostat, activated by the surrounding outside temperature. Fuel is fed from the main reservoir to the auxiliary tank by means of a float type valve. If by any chance this float valve ceases to function, the fluid rising in the auxiliary tank will shut off the flow from the main fuel tank by closing the ingress of air into said main tank, in other words, by barometric pressure, until such time as further consumption of fuel permits further flow of fuel from the main to the auxiliary reservoir. A pilot light is provided which lights the one or more burners which are used, and this also obtains its fuel from the auxiliary tank.

As the court views the matter, the elements combined in this disclosure were all known to the prior art. The principal contention here is, Was there invention in combining them as the appellants have done here? The tribunals of the Patent Office are of opinion that no such invention is shown.

The patent to White et al. discloses an automatic heater for water and other purposes. In this disclosure there is a principal fuel reservoir, with a smaller auxiliary fuel reservoir below the same and between the main reservoir and the heater. The patent recites that "a constant level of oil" or fuel is maintained between the principal and auxiliary reservoirs. This control is brought about by means of a thermostat of the ordinary bellows type, whereby the level of the oil in the burner is slightly varied by the thermostat as is necessary to regulate the size of the flame. This patent does not specifically refer to a float feed valve and the appellants insist that nothing of the kind may be inferred from this patent.

The French reference patent discloses a large capacity fuel reservoir and a supplemental supply reservoir, in which latter reservoir the fuel is held at a constant

level by means of a float valve. The fuel which supplies the burner receives its supply from the supplemental reservoir. If the float valve ceases to work properly, the supply of fuel can be shut off by barometric pressure, and a supplemental chamber is also shown for additional safety provision for the same purpose. No thermostatic control is shown by this French patent.

The Board of Appeals was of the opinion that all the elements of the appellants' device were shown in the prior art, exemplified by the three reference patents. We have reached the same conclusion. It is evidently intended by the cited art to maintain a constant level in the supplementary tank. The references mention this feature, and while none of them shows a combination of the two elements as in appellants' disclosure, the characteristics of the thermostatic control and the float feed valve were well known to the art, and were fully explained in these patents severally. It does not appear that it would be invention to combine the valuable character of both features, as shown by these patents, into one apparatus. As a matter of fact, it would seem obvious to one skilled in the art to do so. The other features of appellants' device, such as a pilot burner, are shown by the reference patents.

We are unable to discover wherein any new and useful end is accomplished by the combination of the appellants, such as would make the combination patentable. The same objects are disclosed in the reference patents, and the adaptability of the various elements used are well known in the prior art.

Much the same principles were involved in Re Cordes, 76 F.(2d) 302, 304, 22 C. C.P.A.(Patents) 1158. In that case, a combination was claimed, including a liquid supply tank connecting with a carbureting chamber, a means adapted to maintain a constant liquid level in said chamber, and other features. The prior art showed the various elements which were combined in the claims of this application, but which were separately shown, and not in combination, as in this application. The question before the court in that case was whether it would be obvious to combine these various elements, and, in discussing the combination, we said, in part:

"Both the patentee Bruce and appellant had the same objective, viz., the se-curing of a uniform gaseous mixture; both employed pressure regulators for this purpose, but appellant, by the use of a constant level type of carbureter, secures, no doubt, a more nearly uniform mixture than could be secured with the Bruce apparatus. The Examiner, in his statement, expressed the opinion that Bruce would produce a uniform mixture under all conditions, but that, assuming that appellant secures a somewhat better mixture, no new result was produced rendering his combination patentable. It is our view that no unexpected result is secured by appellant's combination, and that one skilled in the art, with the Bruce, Garred, and Cornish patents before him, would realize that by substituting in the Bruce apparatus the constant level type of carbureter shown by Garred or Cornish for the carbureter shown by Bruce a more uniform mixture would be secured. Therefore, the new combination did not require the exercise of the inventive faculty. If this substitution were made, the claims here involved would read upon the Bruce apparatus."

The decision of the Board of Appeals of the United States Patent Office is affirmed.

Affirmed.